Good morning, your honors. May it please the court. My name is Joel Bondurant. I am here representing today the appellant Sherif Akande in this case, and this case just presents a fairly straightforward question, I believe, under established law of whether Mr. Akande received ineffective assistance of counsel with respect to a guilty plea he entered and then subsequently with respect to a motion to withdraw that plea. And I'm supposed to spend probably the majority of my time today talking about the first, which is the actual plea agreement, and the reason being is as to the second sentencing counsel's alleged mistakes with regard to the motion to withdraw, I believe the record is very underdeveloped on that and probably would need to be sent back for further proceedings on that. So having said that, my client pled guilty to a multi-count, multi-defendant indictment, was sentenced to 199 months. As part of that process, his attorney had advised him that the only way that he could preserve a pretrial ruling on a motion to suppress, to preserve that issue for appeal was to enter an open plea to the court without a plea agreement because this court doesn't allow conditional pleas except with respect to issues that are case dispositive, which that motion was not. So at any rate, my client proceeded with that understanding, subsequently learned that that was not in fact, the law was not the case, that the open plea he entered did not in fact preserve issues, so he proceeded to try to withdraw that plea. And so the, ultimately again, he was sentenced to 199 months, which was upheld on direct appeal and then these proceedings followed. And so as is relevant... What remedy are you, what are you seeking on that particular claim? As to the first claim, Your Honor, we're seeking a finding that there was in effect an effective assistance and a vacation of the conviction. As to the second claim of ineffective... Whoa, whoa, whoa, whoa. You get a vacation of the conviction or you get a new trial? Exactly. Your Honor, yes, I should have been more precise, but a vacation of that conviction for the purposes of having a new trial should the government choose to retry him, yes, that's correct. I don't think that, no, it would not be a double jeopardy issue, I don't believe, so, right. So it seems to me that the real, I mean, I don't think there's any real argument that there wasn't, the lawyer gave inappropriate advice. The question is about prejudice, right? Yes, ma'am. And so what evidence is there in the record that there's a reasonable probability that absent this misadvice, he would have gone to trial? Well, to answer your... I mean, the evidence looks pretty strong, right? Yes, ma'am, yes, ma'am. In order, actually, to answer your question, I'm going to use a question you proposed to the counsel from the prior argument, which was, if you look at any case that says my client has the win, what case is it? And that's Lee versus United States, Your Honor. And if you look at that case, which is discussed extensively in my brief, of course, and if we pick up at about page three, what the Supreme Court says is that this prejudice analysis focuses on, if it's one that affected the defendant's understanding of the consequences of pleading guilty, we don't look at hypothetical scenarios of what might have happened if, when. It focuses on his decision making, and the question is whether a defendant properly advised would have rejected the plea and opted to go to trial. So, with... And the court went on in Lee to find that that was present based on, largely, the fact that Lee himself and his attorney testified that that was the case, that the immigration counsel... Well, you got that on point, but to go further with Judge Marsh's question, Lee does say that. The question is, is there an alternative? He had a plea agreement. Not really much information on that. Why would you remedy, or you would seek and heal, and not be simply to remand for an evidentiary hearing to determine if, in fact, there was an alternative? Well, Your Honor, I think the answer to that is that's certainly an option that's available to the court, and I did ask for that in the alternative in my brief. But, I think, based on the existing record that we got from the... Well, it seems like a more effective way to do it than to ask us to make findings and to consider, to simply send it back for a new trial. Right. If, in fact, there's a plea agreement, and as Judge Marsh alluded to, this is not a closed and shut case as to someone who would go to trial under these circumstances. Well, Your Honor, I respectfully disagree, and the reason being... You disagree that this is a case that shows he absolutely would go on the trial? Absolutely, yes, sir. And the reason is because this is where we get into the Supreme Court's discussion of whether or not the decision would have been rational to go to trial, or whether, or actually, properly phrased, whether the court can say it would have been irrational to go to trial. Didn't his attorney testify that maintaining his appellate rights were very important to him, and that was what he wanted, that's why he entered into this plea? Exactly. If he went to trial, would he still maintain his right to appeal the, I think it was a Yes, what could have happened was he could have gone to trial, and I think at that point it gets re-raised as 404B evidence, and it gets preserved in that procedure. But I want to return back to, and I hope I answered the question, if I didn't, I'm glad to try again. But returning back to your question, Judge Wynn, the basic reality is my client, Mr. Akande, got nothing for his plea agreement. He had no incentive to plea. He got the worst sentence of all the co-defendants, including a worse sentence than the guy who He was sentenced to 199 months, which was the top of his guideline range, the absolute maximum guideline sentence. He didn't preserve his appellate rights. He literally got no consideration at all for his guilty plea. As a matter of fact, he had every incentive just to go to trial and do what the court said in Lee, which was throw a Hail Mary. He might win, he might get a favorable jury. He might get, you know, he might win on the motion to suppress, which would substantially weaken and undermine the government's case. The reality is he had no incentive to plead, to plead like he did, except for the misadvice of counsel. He literally got nothing. Well, that doesn't, you mean, except for the advice that he could preserve this, that doesn't really, that isn't really a basis for, maybe I should back up. Did she tell him that he would lose this right to challenge the, to his appeal rights if he went to trial? No, ma'am. She told him that could be, that issue could be preserved for appeal by the discussion, according to the record, and again, this is quoted in my brief at page six. Yeah, no, okay. So, what I'm trying to do is to figure out what his calculus was when he was, so she told him, if you go to trial, you have preserved this right, right? Or if you go to trial, you have, which did she tell him? That was a way to preserve it. Okay, she told him that was one way to preserve it, and another way to preserve it was to take this plea. The open plea procedure. The open plea, right. Yes. And the latter was wrong. So, what she, what he says is, I had no reason to go to trial because it would, it would be the same no matter what. My client told me, I can still preserve this argument, right? If he pleads guilty, open, that's what she told him, yes, ma'am. And if he went to trial.  And if he went to trial, he could have preserved it that way. So, in making the calculus about, holding it against him that he went to trial is really not fair for his own beliefs told, informed by his lawyer. Right. It didn't make any difference. It would just save him some hours of agony hearing this because he's still preserving his right to challenge. Which was, yes, exactly, which was very important to him, of course. So, the calculus from his perspective is this. He's charged with bank fraud, identity theft, things of that nature, and the evidence is based in large part on the seizure of his residence, which he co-shared with his brother who was also an offender. And so, they did a motion to suppress the documents and evidence that was retained there. He wanted to preserve the right to appeal that because obviously it's critical evidence and if we win, and that, you know, we being obviously him, if he wins, that obviously substantially weakens the government's case because a lot of the documents are out. So, I want to preserve my right to appeal that issue. How do I do that? And his attorney told him he could do it with an open plea, but couldn't do it with a plea agreement which would have required a conditional plea. Which was impermissible because it's not a case dispositive issue. So, he opts to do the open plea with the misunderstanding provided by counsel. And then that really hurt him at sentencing. Really hurt him? Well, yeah, it hurt him. Well, I'm not going to say so much it hurt him as that it didn't help him. He had no incentive to plead. If he couldn't preserve his appellate rights that way, then he can go to trial. If the court's going to sentence him to the max guideline sentence anyway, the Senate, you know, the probation report's going to be the same regardless of whether it's compiled now or the end of trial, because as your Honor noted, we don't hold it against people that they went to trial. He didn't get acceptance. He didn't even get acceptance of responsibility. Did he seek it? I'm sorry? Did he seek acceptance of responsibility? Yes, sir, he did. He sought that as part of the sentencing phase. That was part of the incentive for making this plea was to think that he could get an acceptance of responsibility with the plea. That's not in the record. I don't know where that comes into play is once plea counsel gets removed. We need it in the record? If he goes in and he pleads, we know if you plead, typically that's a basis for saying acceptance of responsibility. When you say, why would you do a plea, you think you're going to get acceptance of responsibility credit would be incentive to take it, wouldn't it? Yeah, that certainly is an incentive for people to take pleas if they can get what is a three-point reduction, I think it is, for the acceptance of responsibility, but of course, he didn't get that. He didn't get it. And so, it's not measured by the result because any of these things you take chances and risk in terms of what's going to happen at trial. Right. And so, you know. Well, I'll say this, Your Honor, that while that certainly can be an incentive for people to plead, the record in this case, the testimony, is that he did what he did not to get acceptance of responsibility, but in order to try to preserve the issue for appeal of the motion to suppress. And so, whether or not that was a background consideration, I don't know. That was not discussed as part of plea counsel's testimony, if you will, or arguments at the hearing on the plea withdrawal motion. So, it's just not in the record that he did it to try to get acceptance of responsibility. The record and the undisputed evidence as it currently stands is he did it to try to get, to try to preserve the issue for appeal. So, that was his main and key strategic consideration. That's undisputed. So, one other remedy, even though we don't typically do anything like this, would be that you would be satisfied with, would be let him appeal his motion to suppress. I have not given that any thought, Your Honor, but I don't think. You said he didn't. He's mad because he didn't get to appeal his motion to suppress. Nothing else, right? That absolutely would help, yes, sir. I don't know how that works mechanically. I'm not saying would or should. I'm just saying that that is a remedy, potentially, you're saying that the court, and that seems a lot simpler than a new trial. Your Honor, I can't argue that that certainly would be simpler than a new trial. Just never, as you said, it's a very creative response, and I've never seen it done and didn't give that remedy any thought. I thought it would be either, as Judge Motz indicated, reversing remand and enter relief for a new trial, or affirm and my client loses. I did not give any thought to alternative creative remedies. Of course, the government always has that possibility in its hands by letting him enter a plea that reserves the right to make this argument on appeal. But I don't think he could do that here because that would be a conditional plea agreement. Right. They could enter a conditional plea agreement with him. But you can't do that in this circuit unless it's a case dispositive motion, and a motion to suppress isn't technically case dispositive. It knocks out some of the evidence, but the case survives. That's why he didn't do a conditional plea, and that's why he didn't see the conditional plea. That's the whole point. Well, I think that, in other words, you're saying even if that evidence goes out, he loses? No, Your Honor, what I'm saying is even if that evidence goes out, the case can still go on. There are all kinds of times where we look at conditional pleas and the argument that's made that the person is preserved. I understand that. But all I'm suggesting is that... And lots of them are evidence questions. I understand. And you can, I mean, certainly theoretically have a dispositive evidence question. If this evidence is out, the case is over. All I'm saying is that under the law of this circuit, it would have to be case dispositive. It was the Attorney, Mr. Deek's, opinion that this motion did not fall within that penumbra of questions. Well, in the interests of judicial economy, Remedy-U-Seek is a full-blown trial that can be cured if we simply reviewed the motion to suppress, which would come back up anyway. So that's going to be an issue anyway, because now you're going to trial the whole bit. So the question is, if the government were to agree, I don't know, we could have asked, maybe we could have addressed this beforehand and said, why don't you be prepared to address the motion to suppress? And we said, there's nothing to this underlying motion to suppress. It's like you're doing an ineffective assistance, a counsel claim, when it actually comes up, particularly in the malpractice thing, you actually go and look to see if the underlying matter has any basis to it. We're talking about a motion to suppress. That's not a winner in any case, but it's a matter you want to have appeal to do it, whether or not one way or the other. I'm just speaking in terms of, is there a shortcut, some way to resolve this matter without a full-blown trial? I understand you're, I don't think there is, and I think we're sort of treading on what I'll call dangerous territory here, because when you start talking about the merit, the potential merits to the underlying appeal. But your client wouldn't be upset. He's got his, he would get what he wants. Might be dangerous, but if we gave him a hearing appeal on his motion to suppress, what are you complaining about? What about, you said that the second attorney's ineffective assistance of counsel allegation is not fully, fully in the record. Yes, ma'am. Rather than vacate for a trial, wouldn't there be, what about an evidentiary hearing applying the appropriate case law for the district court to consider both the, what happened with the first, well, I guess that's in the record, but what happened with the second lawyer? I think my answer to that, Judge Thacker, would be along the lines of what Judge Williams suggested is just judicial economy, because we can tell from the record that the prejudice is there as a matter of law. Well, for the first, but I thought you said the record wasn't fully developed as to whether there's prejudice with what the second attorney did, which is basically, I mean, he took back his, your client took back his motion to withdraw his plea and went ahead and was sentenced. That's accurate. And of course, there's a- So why isn't that take back sort of, okay, clean slate now? Well, for several different reasons. One is because it's long after the fact. So it could not have impacted his decision making at the time that he was given this issue of whether to plea. And it's not like you can just walk into court and say, oh, I'll take it back, I'm withdrawing my plea. You've got a lot of factors you have to prove under Moore. And he claims as part of the second ineffective assistance claim that he was actually misadvised as to what those factors are. And if we credit his testimony, which we have to at this point, because there was no hearing granted, then his papers would actually state a claim of ineffective assistance against the sentencing counsel, not only the plea counsel. He says that sentencing counsel told me I had to claim, had to prove actual innocence to withdraw my plea, which is just not an accurate statement of the law either. So you want us to, I just want to make sure I understand what you want. You want us to vacate the conviction and just reset, start over where he would have been? Yes, I think that's appropriate, Your Honor. He received ineffective assistance of counsel that the Sixth Amendment guarantees him. Okay, but can I just go back to Judge Wynn's question to you, or a series of questions. And if we should, if the government should agree to have a hearing on the argument that he wants to preserve, then he would have the right to come up here and appeal it. Why wouldn't that satisfy your, you're not claiming, you're not attacking the conviction per se. In a sense, you're correct. We're attacking the process, of course, because the process gets tainted by the ineffective assistance. I mean, the defendant's entitled to that at every step of the critical phases, and he didn't get it at the plea bargain stage. And he waived that, and it just changes the entire dynamic, the entire analysis, and that, you know, if we look at... I'm sorry, I didn't read your briefs suggesting that this denial of his objection, denial of his appellate rights, and that is the challenge to the Supreme Court motion, in any way affected his guilty plea, or his finding of guilt? Well I... He did enter. He didn't have a plea, but he entered. Right. I mean, I understand... I mean, does he maintain that if that evidence had been in the record, or not been in the record, that he would have been acquitted? Is that what he maintains? I don't know if it's quite that strong, because you never know what a jury's going to do. Well, I know you never know, but of course you never know, but do you make this, he claimed that that's what would have happened? We don't know. Is that his contention? I'm not sure that he would go quite that far, that I would go quite that far, but I think what we can say is certainly if the motion is suppressed, is overturned, and the evidence is suppressed, it greatly, greatly increases his odds of an acquittal. And again, he got nothing for pleading guilty. He had every incentive to go to trial and throw a Hail Mary, even if we decided that the underlying appeal may have had very little merit. He goes and throws a Hail Mary. Why? Because he's not getting any consideration for pleading guilty anyway. Why wouldn't I take the government to trial and force them to prove and convince a jury to convict me, and then come up here and convince this court that the district court was right on the motion to suppress? I mean, at that point, if I'm getting nothing for pleading guilty, I've got every incentive to put the government to its paces, to make it walk the walk and talk the talk, and do what needs to be done. I mean, he literally got nothing. He pled open. That's not the first time that happens. A lot of times, individuals plead guilty, and they get the max. I think that argument could be made in every case. You know, if you get the max, you got nothing from this plea. I agree. I agree. But presumably, those sentences aren't impacted by the fact that the defendant got ineffective assistance of counsel, was told the wrong thing. Well, you bring up the ineffective assistance of counsel, but his one complaint is that he did not get to appeal the motion to suppress. That's it, right? That's his only complaint. That is the effect. The only thing, he didn't get to appeal the motion to suppress, and normally, if you enter a plea, is there a way you can appeal the motion to suppress and enter a plea to? Not to my understanding, unless the motion to suppress is somehow determined to be case dispositive, which it has to be under the law of the circuit. If it's not a case dispositive, He can't preserve his right to appeal the motion to suppress? Not to my understanding. That's part of the agreement? If it's not a case dispositive motion, then not to my understanding. I mean, that's the black letter law of this circuit. What was he seeking to suppress? There's no inventory of the actual items in the record that I saw. The actual motion to suppress speaks generally in terms of the residence being searched and refers generically to counterfeit checks and documents. He was trying to suppress the evidence of the checks? The checks, the front, there were identity theft documents in the home. It doesn't specify what they were. There were apparently some fraudulent checks in the home. So if he'd won the motion to suppress, would the case have been over? I don't think it necessarily would have been over. It would have been greatly weakened. I mean, in theory, the government can still put up the code conspirators who can testify verbally, but they've got no documentary evidence. It weakens the motion. It's a motion in limine. I'm sorry? It's kind of like a motion in limine, isn't it? Very similar, yeah. In a lot of ways. I don't think it is. It's an evidentiary thing. It just damages it greatly. Sorry? It's an evidentiary type consideration. The evidence. Yes, sir. Yes, sir. Very. You're talking about, back to the whether he could enter a conditional plea. So in your reply brief, United States v. Fitzgerald, a Fourth Circuit case for that proposition. Is that where you're seeing that? Yes, ma'am. So you can't have a conditional. You can't reserve rulings in conditional pleas, to my understanding, based on the Blackwinter law, of motions that are not case dispositive. And this one, at least I don't think it was, and Ms. Sedig didn't think it was, and so that was her thinking. Could we review the trial for sufficiency in the terms that if that evidence was not allowed, whether that would be sufficient? Well, there was no trial, Your Honor. The guilty plea went through, and he was not allowed to withdraw it. So there was no trial. And so if there are no further questions, I see I've gone over my time. Good morning, Your Honors. I'm here to say today, to argue that the district court properly concluded that defense counsel was not ineffective, both in advising the defendant of his appeal rights and in advising him of the standard of proof withdrawal of his guilty plea. Could he have entered a conditional guilty plea preserving the motion to suppress issue? So I did participate in the case below, and I would tell you that that was not raised, but I don't believe we would have gone forward with that. Well, he's, but I guess my question, it's not really so much as would the government have done it. He's saying that his client could not enter a guilty plea on that issue because it's not case dispositive pursuant to the Fitzgerald case. And I think that's right. And there's a couple of things to say in response to you, Judge Thacker. First is what Ms. Deek said in court during the process of having the hearing on the motion to withdraw the guilty plea. And she said, we did talk about appealing the suppression issue. I did tell him that I didn't think at the time there was really an appealable issue with respect to that, since it's not dispositive of anything. And then she goes on to talk about in the 404B context, since he wasn't indicted on any of those documents. Ultimately, preserving the rights in this case, whether there was a conditional plea or not, would mean nothing for what happened. Well, I think what you're saying to us is that the government wouldn't have permitted a conditional plea, as I understand it. That's correct. There has to be an agreement. That's correct. We have to agree. So you're not really answering the question of could there have been. In another case, can the government enter a conditional plea on the suppression, the kind of evidence, the kind of issue that he wanted to suppress here? You can, Your Honor. That's what I thought. Yes, you can. But we were not going to agree to this in this case. Okay. So where does this case dispositive thing come in? The government doesn't regard that as, oh, this isn't case dispositive. We are barred by the law from entering this guilty plea. This is all within the government's discretion about whether they're going to allow a conditional plea or not. Yes. It was never, there was no inquiry of us. No, there was no inquiry. I'm talking, how long have you been an assistant to the United States Attorney? A long time, Your Honor. Okay. So I'm asking you, and you entered into conditional guilty pleas. I have. Yes. So I'm asking you to base your answer on all of those. Where does this business about it must be case dispositive come in? I think it's the Fitzgerald case, Your Honor. I understand where it is in our law. But what I'm asking you, is that a barrier? Can the government say, this isn't case dispositive, so we cannot enter into a conditional plea with you? I had never understood that to be. I thought that entering into a conditional plea was entirely within the government's discretion. That's correct. I mean, I think we look at the issue of whether it's case dispositive before we make that decision. And we didn't review that here, but I don't think it's case dispositive, in large part because the search warrant documents had nothing to do with the counts to which he pled guilty. But, of course, you entering into a conditional plea doesn't mean that you're saying that, in fact, all the more reason to enter into a conditional plea if you don't think it has any merit. The defendant's argument has no merit. I understand that. But ultimately, we had offered a plea. I mean, I think that's fair to say. We had offered a non-conditional plea probably eight months before, and he had rejected that. Based on the incorrect advice of counsel, he rejected that, because what was important to him was that he maintain his appellate rights. His counsel testified about that. Whether or not he could have won or not, the merits, that's not what makes it ineffective. What makes it ineffective is that she gave him incorrect advice. And so I'd like to clear that up, Judge Thacker, as best I can from the record as I see it. First of all, I think that she discussed his appeal rights with him and essentially said they're futile. And then I think if she put in the record, and this I think is from the joint appendix at 88, she put in the record that she simply did not tell him that he would not preserve his appeal rights. I think that conversation is ambiguous. I know the conversation you're talking about. That's correct. I just don't think it's quite there for the government. That's correct. But I thought your argument was that the instructions, the dialogue that the court gave, saved everything. That's correct. And so that's the next step. And so in this instance, you know, the government submits it. The court corrected any possibility of misadvice. Again, it's ambiguous whether there was any. But the court corrected the misadvice with the warning, I guess, that Judge Chasnow had given and said when she's running through the litany of rights the defendant is giving up, she said you would have the right to complain about any mistakes that might have been made before during trial and you're giving up that right. Do you understand? And the defendant said, yes, ma'am. And then later on she talks about the idea that he cannot appeal now anything related to his conviction, which is a little bit more open-ended, I guess. But in this particular instance, this is exactly the type of thing that I think Akinsade, which is cited in Lee, suggested that we have to worry about, which is whether it's a general and a critical instruction. And I submit to you that the judge made it very clear. Go ahead. The judge made it very clear that he is giving up any right to contest a mistake made before trial. In this instance, the only litigated issue was the search warrant. And so the only mistake she could have been referring to is the search warrant. And as a result, it is not a general and equivocal instruction like you had with respect to deportation in Akinsade and Suave and Lee. It was a largely specific and certainly unequivocal warning to him of what rights he's given up. And he immediately answered, yes, ma'am, to that record. Well, we do measure it against those two recent Fourth Circuit cases, the effectiveness of what the district court told it, right? Yes. And so I understand how you characterize the instructions, and they're certainly different, of course, in every case. I'm not sure that they're quite as good, quite as informative as you are suggesting. Well, so I submit to you this, Your Honor. Could Judge Eisenhower have been more informative by rewording the sentence? I think the answer is possible. But the fact of the matter is that the court system has to be able to rely on the dialogue between the district court and the defendant. And in this instance, that language was adequate. And an adequate Rule 11 will save misadvice in the circumstances that came up here. And so as I see it, there's a curative power to the Rule 11 proceeding, the language that Judge Eisenhower used, which is, once again, any mistake that might have been committed before trial, the only mistake here can refer to the only litigated issue, which is that search warrant. And that is enough, Your Honor, in this instance, more than enough in this instance. Well, he didn't go to trial, right? Right. He didn't go to trial. And I understand that. But having been warned about this, he made that decision not to go to trial. Now, whatever – and, you know, this separates itself from Swabian Lee in the other cases because whatever possibility is out there that there was some misunderstanding is then sort of further reaffirmed in the sentencing proceeding, when a different lawyer essentially begins the proceeding by going through what wasn't finished in the motion to withdraw the guilty plea, one aspect of which is the issue of credible legal innocence, and the other of which is an explanation that he did not understand as the defendant, did not understand, among other things, the idea that he may be responsible for irrelevant conduct, that other people could have done things and he didn't realize that, and now he does and here we are. That's almost the specific language of Judge Mitchell. His counsel testified, is this right, that he did not think that the defendant understood from the colloquy that he was waiving his right to appeal the ruling, JA 90. I understand that, Your Honor. I think what he said is he did not – I think the defendant did not understand certain legal principles, one of which is he's responsible for the acts of others. Well. And he's essentially come to the court and said by withdrawing his motion, he's not shirking his criminal conduct, he's accepting responsibility, and he wants to move forward with the hearing, the sentencing hearing. And so I think that's – I believe that's a little different, Your Honor, if I'm citing to the same aspect as you. I think that's right. Your Honor, in discussing with him, I do not think that he understood that he was giving up the right to the pretrial suppression trial. And so if he's reaffirming that, even if that's the case, Your Honor, and reaffirming that there was a misunderstanding. I'm just saying with the lawyer. What I did was ask you if his lawyer thought that. So I'm mistaken. Okay. His lawyer did say that, yes. So in the end, of course, the Rule 11 language used by Judge Chastanel then cures the defect if there was one. Let me ask you about that. Yes. In your brief, you say – I'm going to read it. It says – this is what the judge said. He says, to the defendant, you wouldn't, then you've got brackets, lose the right to appeal to complain about any mistakes that might have been made before going to trial. That's on page 14 of your brief. But if you go to the record on page 56, what he actually said, if you were found guilty after that trial, you would have the right to appeal to complain about any mistakes that would have been made before going to trial. Right. I just changed it because she was reading him the rights he's giving up in generic fashion, and so the language comes out. What do you mean? Doesn't it mean a whole lot to tell a defendant you will lose the right to appeal as opposed to saying if you were found guilty, you would have the right to appeal? Well, remember, Your Honor, that she begins the process by saying, I am now going through all the rights you give up by pleading guilty. You have the right to a trial by jury. Why didn't you just quote the language as it is because it seems a bit misleading to me to put in there and say you told someone they're going to lose the right. That's, you know, this guy was pro se at a point a whole bit. I mean, that's a whole different kind of advice. And you have to be specific in terms of if you give bad legal advice, if you want the Rule 11 to cure it, you should be specific in saying it. And I understand, Your Honor, perhaps. Because the proper cure would have been, you know, you're going to lose the right to appeal anything. You won't be able to appeal that most press the whole bit. That would have taken care of it. And I understand, Your Honor, and I suppose I could have quoted it slightly differently, but the bottom line is she begins this. You could have quoted it just like it is. Correct, Your Honor. And then put in that bracket that you would lose when it doesn't say you would have the right. That's different. If you put in you would lose the right. But I beg to differ, Your Honor, on that. That's what that sentence said. But she begins that by saying you would lose the following rights. And you have the right, for example, to trial by jury. You lose that. You have the right to appeal any mistakes made before during trial. You lose that. That would have been a perfect thing to put in your brief. That's not the way it's written. I'm just telling you what the brief says. I'm reading it right in front of you. I accept responsibility for that. And she doesn't say you'll lose that. She says, and it's like several paragraphs into a long colloquy earlier, I'm now going to review with you all of the very important rights that you will give up by pleading guilty. Yes. So these are the things that the defendant says, and I think that's pretty clear. But then later on, 65 to 66, by pleading guilty, you and the government, you in essence are giving up your right to complain about the conviction. Yes. That is the determination of guilt. But you and the government will have the opportunity to appeal if you think Judge Titus makes a mistake in determining the guidelines or some other fashion in sentencing you. Do you understand that both sides have the right to appeal under these circumstances? Now this is not a person who has gone to law school and practiced for many years. This is a person who is unsophisticated. And I don't disagree with that, Your Honor, although he did have a high school education and certainly he understood as he went through this enough to answer, yes, ma'am, to Judge Chasnow. But in that instance, she is again reiterating the fact that he has lost or given up the right to complain about those aspects relating to his convictions such as a pretrial motion. And what's left, the only thing that's left is if he gets an illegal sentence. Essentially he has the right to appeal that. And I think that's less clear, but that's an add-on. The clear language I think is the language I cited, I believe J.A. 56, yes. And so that to me carries the day in terms of its curative effect. Okay, if you were found guilty after that trial, so he didn't have a trial, you would have the right to appeal to complain about any mistakes that might have been made before or during the trial. Now he has to understand that that only applies if you have a trial and that these mistakes, his mistake was before. Yes. That doesn't tell him that if you don't have a trial, you don't have the right to complain about mistakes made before or during, before the trial, does it? It all goes to if you plead guilty after that trial, if you were found guilty after that trial, it doesn't tell you what would happen if you don't go to trial. I understand, Your Honor, that that's true. It does not say that. I'm not trying. I think the implication. I hear you. But what your argument is here is that these are curative. Yes. Of what his lawyer told him the law was. And so it has to be, it seems to me in light of the recent Fourth Circuit cases, really pretty clear that it cures. And this doesn't seem to me quite there. Well, again, Your Honor, I think that the language is sufficient, again, in the way she spoke it, that you give up the following rights, and I'm going to run through those rights you have now, and they don't now exist for you. And so the understanding in the end would be that he does not have any longer the right to complain about a mistake made before trial. And so I think under the circumstances it has been cured. And, again, it's not to be taken in a vacuum because when Mr. Mitchell comes in to represent the defendant in the sentencing proceeding, he goes over this, and the defendant is sitting there. He goes over this, and there's a colloquy with the court over whether or not he's willing to move forward. And the indication is clearly yes, that he's waived this. He's waived his right to complain about the loss of appellate rights. He's waived his right to worry about the actual innocence, and he's ready to move forward, and he moved forward. And, Judge Witten, I think it was you who was talking to my colleague about the things he gave up. When he went to an open plea, which then allowed him, the plea that was offered eight months before had some enhancements that were mandatory. He now had the ability to argue for everything, that acceptance of responsibility, the amount of loss, the enhancement for the number of victims, the sophisticated means enhancement. He argued against all of those, and that was preserved by an open plea, so he got a benefit for it. He was able to reserve the rights. He didn't win any of them, but he certainly had the benefit to argue everything that even the plea agreement would not have given him. And one last thing about this is that when the 2255 comes across to Judge Titus, he doesn't ask for a trial. He never asked again that he didn't want the trial. The thing he wanted was the better plea that had been pulled off the table before he actually pled open. So perhaps possibly a remedy here would be the deficient performance. It seems to be fairly, it seems to be there. If a lawyer gets up and says I was deficient, that's pretty strong. The prejudice prong of it, if there's an avenue for a remand on that, would be to determine whether this plea agreement was a reasonable, probable alternative outcome. I think if you remand on that, it certainly is more appropriate than remanding for a new trial. But I think the reasonable alternative outcome under the circumstances of what happened here is already apparent because he did not have a better plea offered to him. He claims there's an eight-year plea. The plea that was offered to him was between 11 and 13 years, and they were mandatory in Kansas. But the standard, the Supreme Court has said the standard isn't whether it would be a reasonable thing to do. The standard is whether he would do it, whether he had some reason to do it. Because, I mean, that's what this all is, why it's all a problem. But, Your Honor, it's a fair and just reason that's rational. And in the end, I submit to you that it isn't rational to have argued to preserve a right to appeal issues that would make no difference, effectively, because the evidence that was seized during the search warrant did not certainly apply to any of the accounts that were in the guilty plea, but were likely not to apply to any accounts of the indictment, as Ms. Siddique told him and put on the record. Okay, the Supreme Court says this inquiry focuses on a defendant's decision-making, not the likely outcome at trial. Right, and I understand that. But the decision-making can be cured if there is this advice. His decision here still has to be rational and can be cured by this Rule 11. But the question is... We look to contemporaneous evidence to substantiate a defendant's expressed preferences. I don't think there's any doubt. You don't doubt that that was his expressed preference then. I think based on what's in the record, I certainly can complain a little bit about how the misadvice was handled. But no, he made it clear that this was his expressed preference. Right. So, but there... It seems to me that you're stuck with that. So then you have to, your argument is about prejudice. Yes, Your Honor. And the Supreme Court says, or we said this, Judge Gregory said it in a case in which both of my colleagues were on. To show prejudice, the decision need not be optimal and does not need to ensure acquittal. It only needs to be rational. Correct. And so I think I've argued, and I'm certainly repeating myself here, that it was not rational under the circumstances to go to trial because A, he, first of all, gave up his rights essentially the second time around with Mr. Mitchell. Okay. And ultimately, the Rule 11 cures it. So unless there are any other questions, I see my time is up. Thank you, Your Honor. Thank you. So I think this case comes down, at least your argument that you're making here, is whether his decision here, what he wants to do is rational. We did say that.  Yes, ma'am. And the government maintains, no, it's not. So what do you have to say about that? Well, I don't necessarily, well, what I said earlier. I mean, he just didn't get anything really for pleading. He got the max sentence. He didn't even get acceptance of responsibility for withdrawing the motion to withdraw the plea. Well, that's an evidentiary determination. What's that, I'm sorry? To determine if he got something. I mean, your opposing counsel says he had the benefit of making arguments he didn't have with the previous one, and then there's acceptance of responsibility that he tried to get. So he could have gotten something from it. He just didn't get it. So, I mean, that really turns on an evidentiary thing, a reason to send it back. And when you're looking at misadvice and the prejudice side of it, and I think that's probably where we are, if it's a mandatory type thing like deportation, then there's a reasonable probability that he would have insisted on the trial to establish preference. But in this instance, where you're dealing with the turning on the prospects of success at a trial, the defendant has to show that he would have been better off going to trial. So when you get in that realm of things, the question turns on what you asserted. He didn't get anything for the agreement. He may not. But the other side says there is. So why is not the remedy similarly to send it back at least at this stage to the trial judge that says determine if this was a reasonable, probable alternative that would establish that he would have been better off not going to trial? I think I would have to respond to that by respectfully disagreeing as to the standard from the outset, which is the Supreme Court has said, and this court, in swaying Judge Gregory's writing, has expressed that in these types of cases we don't have to look at whether the defendant would have been better off. We don't even, in footnote three. I'm reading straight from Primo v. Moore, United States Supreme Court case in 2011. It quotes it right there. It says the defendant must also show he would have been better off going to trial. Which case is that, John? I'm sorry. Primo v. Moore. Your Honor, if that's a 2011 case, all I can say is that Lee v. United States is 2017, and that's the most recent pronouncement from the Supreme Court. I think we're saying the same thing, though, in some way, but I don't think it makes that much of a difference in terms of the nuance of the words. Except I don't know why you're pushing back on Judge Wynn's suggestion that we send it back now for the district court to determine whatever the standard is with regard to the prejudice prong, because in your brief, you asked for that. Your Honor, I asked for that as an alternative. Okay, so this is an alternative Judge Wynn has given you. Why are you pushing back? I'll certainly take that. It doesn't mean that you could prevail. You prevailed, and you get the big cheese. I understand, Your Honor, and I appreciate the observation. It just makes sense. We don't know. You're making an assertion that you got nothing for the plea agreement. The other side says you did. You know, we can go both ways on that, and I don't know. The probable cause is the one that makes for the fact and do that sort of stuff. Well, what the government hangs its hat on is this last phrase in SWABI. To show prejudice, the decision does not need to be optimal. It does not need to ensure acquittal. It only needs to be rational, and I would have to go look at SWABI again in the Supreme Court cases to see what was intended by needs to be rational. Does that mean that the defendant had to not be insane to be a good, healthy-minded body? Does that mean it has to be rational in the eyes of the court? Does it mean it has to be rational in his eyes? Does it mean it has to be objectively rational or subjectively rational? That's what I think we know from that court. Well, I understand the point, but I think it goes back to the observation you made earlier from the Lee case. I mean, Lee, 2017. The Supreme Court made very clear that in these types of cases where the injury alleged is I took a plea that I wouldn't have otherwise taken. I would have gone to trial. It focuses on, and the Supreme Court uses this language, the defendant's decision-making. It is very clearly set forth as basically a subjective standard. It's not an objective standard. A reasonableness that we second-guess whether or not, and part of the reason, I hesitate to say I'm pushing back on Judge Winn. I don't really mean it that way. On the one hand, I don't really think it matters whether he got anything for his plea agreement or not. The question is, based on his own strategic objectives at that time, would it have been rational for him to go to trial and to forego an open plea procedure? It's really that simple and that straightforward. That's why I don't want to get bogged down in questions about whether he could have technically gotten into a conditional plea agreement. I don't know. I know what Fitzgerald says. I know his lawyer testified that she explained to him he couldn't have one. And so if it turns out that he actually could have one, that would just further underscore the deficient performance side. So it just makes his case stronger rather than worse if he could have gotten a conditional plea that he didn't even ask for, according to the government's recitation of the facts. So it's a very straightforward, I believe, application of Lee to just say exactly what I believe this Court has come to the realization of, which is there was deficient performance. And if we look at very simply what Lee requires in terms of prejudice, which Your Honor noted Judge Mox was the expressed preferences of the contemporaneous evidence. Well, let's look at Lee's language. It's right here. When a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Right. That's right. And it goes on to say the proper and prescribed inquiry focuses on a defendant's decision making. So it's an entirely subjective standard of what he would have done based on what he knew and the misadvice he was given. And it goes on to say that when the prejudice analysis is properly focused on what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decision making. So even if we look at it from an objective standard, Judge Mox, as you indicated, and we conclude that this was highly improbable, that he was ever going to get any relief for the motion to suppress, it doesn't matter objectively whether that's true or not. The question is what did he think at the time he made his decision about his prospects and the best way to go about seeking his strategic objectives. And so then it goes on to say, of course, the court puts into place this evidentiary check for obvious reasons because you don't want a flood of claims from people with plea bargainers remorse. The court says we should look to contemporaneous evidence to substantiate a defendant's expressed preferences. And the Supreme Court found that that was satisfied and there was prejudice in Lee because the attorney and the client both said, yes, immigration was the most important thing to me, and if I'd known I was going to be subject to mandatory deportation, I wouldn't have done it. I'd have gone to trial. Why is that not another class of cases that when you're dealing with mandatory deportation, the court in Lee did recognize almost what I think is a bifurcation of the class of cases and distinguish between when an attorney gives incorrect advice on the consequences of the plea versus deficient performance that occurs prior to taking the plea. That hurts the likelihood of success at trial. Two different things. When you have a deportation, mandatory deportation, oh, that's real. I mean, that's a basic showing saying the reasonable probability he would have insisted on going to trial will establish prejudice. But if he turns on the prospects of success at the trial, then that's when you go back to the CREMO language that says the defendant must show that he would have been better off going to trial. Two different things. Right. And this is more the latter than it is the former. This is not a mandatory deportation case. I strongly disagree, Your Honor. It is a mandatory deportation case. It's not a mandatory deportation case, but it is very. The consequences are nowhere near it. Here's the quote. Here's the quote. So the Supreme Court takes categorical approaches to these cases depending on the type of harm that's alleged. Yes. And here's the way in generic terms. Take out the fact the specific application in Lee is mandatory deportation and immigration. Here's the quote. 137 Supreme Court at 1965. When a defendant alleges his counsel's deficient performance led him. Well, I just read that. We just read that. Exactly. But that same case went on to deal with the modification of those different kinds of cases there, which you've got that distinction where you've got a mandatory deportation type case. I don't think that failing to give someone advice and they're going to be deported based upon this bad advice is one thing. But then failing to give advice and the question as well as he would have insisted on going to trial, he'd been better off at trial is another thing. Right, Your Honor. But the advice here is not that he would have been better off at trial. There would be no discussion of the merits of going to trial. The discussion was can I preserve my appellate rights or not. And here's the quote. I mean, this is. Yes, even less because all you're asking for is what we started out, and that is that you want to have the right to appeal that motion to suppress, which is not a dispositive motion. That was the prejudice in this case. That's the big deal here. That's exactly right. Exactly right. And so the test for when Lee applies is when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea. When you've got that type of allegation, you've got a Lee claim, and that's where we are. And the ones about competing plea agreements, that's Missouri v. Frye. You know, the ones about if I didn't get my plea agreement but I went to trial, that's the Lafler case. But all these prejudice inquiries are very particularized depending on the types of prejudice alleged. So you have Lee in front of you? I don't have the case, but I have my excerpts from it. Well, it's always good to have the whole case. Do you have 1965, which is where one of your excerpts were? I mean, in other words, have you taken just that phrase out? I've taken different excerpts from that page. I don't have the whole page. But I know the case well. If you've got a question about it, I'd be glad to answer it. Okay. The set contends that a defendant must also show that he would have been better off going to trial. This is true when the defendant's decision about going to trial turns on his prospects of success, and those are affected by the attorney's error. For instance, where a defendant alleges that his lawyer should have, but did not seek to suppress, an improperly obtained confession. Right. So your case is different than that because... Because my... Ms. Sadik didn't say, you should turn this plea agreement, because we've got a really good case at trial, and you should go to trial. That's what that's talking about. When the attorney's misadvice turns on the likelihood of success at trial, that's what that discussion is about. This plea agreement had nothing to do with the likelihood of success at trial. What does this turn on? What does that advice here turn on? This turns on my client wanting, again, my client's main strategic objective in defending the case was to try to knock out the evidence that was obtained pursuant to the motion to suppress. That was his primary strategic objective. To succeed at trial. Ultimately, yeah. Of course, yeah. Well, everybody wants to succeed at trial at the end of the day, so that's... I mean, that's what your client is here. He says, this plea is turning on the success of the plan. He's trying to get a motion to suppress. Really, what you want to do is to succeed on the appeal of the motion to suppress. Right, but I disagree in the sense that what that case, what that discussion is talking about and what the cases are talking about is where the attorney's advice is, you should reject that plea because we got a really strong case, and so that's when the misadvice turns on the likelihood of success at trial. Here, it was strictly about I want to preserve my rights to the appeal. Attorney says, well, we can do that with an open plea, but not with a conditional plea. Turned out to be wrong. Now my client has lost his ability to affect his main strategic objective. It had nothing to do with his likelihood of actually succeeding at the trial or even on the appeal. It's just something he wanted to do, and this, of course, pulls in all the language from the Supreme Court that says, even a long shot, we don't even look at that. I mean, in the Swaby case, this court said, if there's this type of error, the defendant's entitled to make a decision. We don't care even how slim the chances are. So we don't get into this alternative. Footnote 3 from Lee says, it's not only unnecessary to view the possible alternative hypothetical scenarios, it's improper to do so in a case like this. So with that, that's the best I can do with the answers to the questions, and if your Honor's have any more, I'll be glad to try to answer them, but I see my time is up. Thank you very much. Thank you, Judge. We will come down and say hello to the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, James A. Wynn Jr., Stephanie D. Thacker